**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GUNDRY/GLASS HOSPITAL,
<u>Plaintiff-Appellant,</u>

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES;
HEALTH AND HUMAN SERVICES,

No. 98-1954

<u>Defendants-Appellees,</u>

and

BLUE CROSS AND BLUE SHIELD OF
MARYLAND; HEALTH CARE FINANCING
ADMINISTRATION,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-96-3986-S)

Argued: March 4, 1999

Decided: April 5, 1999

Before NIEMEYER and WILLIAMS, Circuit Judges, and
SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Edward Glass, MICHAEL E. GLASS, P.A., Baltimore, Maryland, for Appellant. Tamera Lynn Fine, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Bataglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gundry/Glass Hospital (Gundry/Glass), a Medicare provider, sought reimbursement for costs incurred in the acquisition of a certificate of need (CON) under the Medicare Act, 42 U.S.C.A. §§ 1395-1395ggg (West 1992 & Supp. 1998). The Secretary of Health and Human Services (the Secretary), who must reimburse Medicare providers for the reasonable or customary costs associated with caring for Medicare participants, engaged Blue Cross/Blue Shield of Maryland (Blue Cross/Blue Shield) to administer the reimbursement program in Maryland. Blue Cross/Blue Shield denied the requested reimbursement and Gundry/Glass appealed to the Provider Reimbursement Review Board (the Board). Blue Cross/Blue Shield's decision was affirmed and the reimbursement disallowed. Gundry/Glass appealed the Board's decision to the United States District Court for the District of Maryland, which had jurisdiction pursuant to 42 U.S.C.A. § 1395oo(f)(1) (West Supp. 1998). The district court affirmed the Board's denial of reimbursement and Gundry/Glass now appeals to this Court. We affirm the district court's judgment, but for somewhat different reasons.

I.

The facts of the case are not disputed. In 1988, Gundry/Glass acquired all of the assets of the Rachel Gundry Hospital, which

included a CON. According to the testimony of Gundry/Glass's CEO, the Rachel Gundry Hospital originally acquired the CON at relatively little or no cost in the early 1970's through a state law grandfathering mechanism. The CON was an important acquisition because under Maryland law Gundry/Glass could not operate without it. See Md. Code Ann. Health-Gen. II §§ 19-115(e), 19-319(c) (Supp. 1998).

Gundry/Glass paid a total of $3.2 million to acquire the Rachel Gundry Hospital. Of that amount, only about $375,000 was allocated to the hospital's tangible assets. According to testimony, loan agreements, and valuation documents, the remainder of the purchase price was assigned to intangibles such as goodwill, the CON, and the lease assignment. Arthur Andersen, Gundry/Glass's independent auditor, deemed goodwill to account for only a small portion of the total amount assigned to intangible assets. Although no specific value was assigned to the CON, a consensus of the evidence in the record points to the CON as being the most valuable asset, tangible or intangible. Gundry/Glass's CEO stated that the CON's value had increased because Maryland was no longer issuing new CON's since "[t]here was no bed need available."

After the acquisition, the former Rachel Gundry Hospital began operating as the Gundry/Glass Hospital. The patient population and professional staff quickly turned over, but the institution continued operating without interruption. In 1989, Glass submitted its cost structure to Blue Cross/Blue Shield for reimbursement under the terms of Medicare. The cost structure included $376,537 in interest expense attributed to the debt incurred to purchase the intangible assets and $72,435 in amortization of the intangible assets' value. Based upon the amount of Medicare service provided, these expenses translated into a requested Medicare reimbursement of $137,405 for interest expense and $26,433 for amortization expense. Blue Cross/Blue Shield declined to reimburse these amounts because it contended that the costs were insufficiently related to patient care to be reimbursable under Medicare and that, in any event, Medicare would limit the value of the CON to a nominal amount and thus negate reimbursement. Gundry/Glass appealed Blue Cross/Blue Shield's disallowance to the Board in accordance with 42 C.F.R. § 405.1835 (1998), but the Board upheld the denial. On appeal to federal district court, the deci-

3

sion to disallow the disputed costs was once again affirmed. Gundry/Glass now appeals to this Court.

## II.

Under 42 U.S.C.A. § 1395oo(f) (West Supp. 1998), the Board's decision should be reviewed in accordance with the standard announced in 5 U.S.C.A. § 706 (West 1996), and the decision should not be overturned unless it is not supported by substantial evidence, is arbitrary or capricious, or is contrary to law."When reviewing an agency's decision to determine if that decision was arbitrary and capricious, the scope of our review is narrow. Like the district court, we look only to see if there has been a clear error of judgment." Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287 (4th Cir. 1999) (internal quotation marks omitted). It is not necessary that we would interpret the evidence in the same manner as the agency. Instead, the agency's decision must be supported only by substantial evidence, i.e., evidence that a reasonable mind would accept to support a conclusion. See Pleasant Valley Hosp., Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994).

## III.

Four issues are presented on appeal. First, whether interest expense related to the acquisition of a CON is an allowable expense under Medicare regulations. Second, what amount of interest expense would be allowable under Medicare reimbursement regulations. Third, whether the Secretary violated Gundry/Glass's due process rights by changing her position on the reimbursement of CON-related expenses in midstream and without notice. And fourth, whether the failure to consider certain testimony and documentary evidence at the Board hearing unfairly jeopardized Gundry/Glass's position.[1]

_____

[1] We note that on appeal Gundry/Glass also presses a claim for reimbursement of amortization expense related to the cost of the CON. But as the Secretary notes in her brief, this claim was expressly abandoned in the proceeding before the district court. Gundry/Glass's statement in its motion for summary judgment to the district court was unequivocal: "Gundry/Glass, however, is not appealing the Secretary's decision to disallow the amortization of the CON acquisition." (J.A. at 754.) Because this claim was abandoned in the court below, it is not properly before us on appeal.

We need address only the second question, however, because assuming the CON-related expense is reimbursable, the Medicare regulations undisputably prevent reimbursement due to the CON's negligible historical cost, or alternately, cost basis. This determination renders moot more troublesome issues such as the reasonableness of the Secretary's narrow view of whether a CON is sufficiently related to patient care as to warrant reimbursement.

The Medicare Act and accompanying regulation provide for the reimbursement of a Medicare provider's reasonable costs in caring for Medicare participants. See 42 U.S.C.A. § 1395f(b) (West Supp. 1998). Capital costs, including certain interest expenses, are allowable costs to the extent necessary to provide patient care. See 42 C.F.R. § 413.153(a)(1) & (a)(2) (1998). Interest expense on capital indebtedness is limited, however, to the amount of interest expense attributable to the debt required to finance the historical cost or the cost basis of the asset acquired. Any interest expense on capital indebtedness exceeding that amount is not considered reasonably related to patient care. See 42 C.F.R. § 413.153(d)(1).

Under these regulations, we have a relatively straightforward task. Section 413.153(d)(1) specifically prohibits reimbursement of interest that is incurred on a loan amount that exceeds the cost basis under 42 C.F.R. § 413.134(b) (1998), or the historical cost under § 413.134(g). See 42 C.F.R. 413.153(d)(1)(i).[2] Both of these provisions, inter alia, limit the permissible amount of the underlying debt to "[t]he allowable acquisition cost of the asset to the owner of record as of July 18, 1984." 42 C.F.R. § 413.134(b)(1)(ii)(A)(1) & .134(g)(3)(i). In the case before us, neither party disputes that the Rachel Gundry Hospital, the CON's owner on July 18, 1984, paid little or nothing to acquire the CON. Therefore, the loan amount and interest expense relating to patient care is nominal at most. Under the plain language of the regulations, Gundry/Glass is not entitled to any reimbursement

_____

[2] This provision reads: "The following types of loans are not considered to be for a purpose reasonably related to patient care: (i) For loans made to finance [the] acquisition of a facility, that portion of the cost that exceeds -- (A) Historical cost as determined under§ 413.134(b); or (B) The cost basis determined under § 413.134(g) .. . ." 42 C.F.R. § 413.153(d)(1).

5

for interest expenses deriving from the loan obtained to finance the CON acquisition.

Despite this plain language, Gundry/Glass argues that the legislative history of the authorizing statutes indicates Congress's intent to restrict reimbursement only in limited instances. Quoting legislative history, Gundry/Glass maintains that the restrictions on reimbursement were established to prevent the government from paying twice for the same asset -- i.e., once for the cost to the original Medicare provider and a second time for the subsequent provider's cost of purchasing the asset from the original provider. Using this logic, it follows that because the Rachel Gundry Hospital paid little or nothing for the original asset, there is no risk of the government paying twice. The fatal flaw in Gundry/Glass's reasoning is, of course, that whatever the intentions of the individual members of Congress speaking on the record or the language used in various committee reports, we must consider only the language employed by Congress acting as a body in the constitutionally prescribed manner. See, e.g., Roy v. County of Lexington, 141 F.3d 533, 539 (4th Cir. 1998) ("The remarks of individual legislators, even sponsors of legislation, however, are not regarded as a reliable measure of congressional intent."). Gundry/Glass presents no argument that either the authorizing statute or the implementing regulations allow an exception in these circumstances, and we find none. We must therefore implement the governing law as written, without engrafting our own amendments.

We conclude that the regulations clearly prevent any reimbursement for interest expense because the loan proceeds were used to finance the purchase of an asset at a cost in excess of the defined historical cost or cost basis. Therefore, we need not address the other issues raised on appeal.

IV.

The district court's judgment affirming the Board's decision is therefore affirmed.

AFFIRMED

6